# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

COMMODITY FUTURES
TRADING COMMISSION,

      Plaintiff,

      v.

HIGHRISE ADVANTAGE, LLC;
BULL RUN ADVANTAGE, LLC;
GREEN KNIGHT INVESTMENTS,
LLC; KING ROYALTY LLC; SR&B
INVESTMENT ENTERPRISES,
INC.; AVINASH SINGH; RANDY
ROSSEAU; DANIEL COLOGERO;
HEMRAJ SINGH; and
SURUJPAUL SAHDEO,

      Defendants.

Case No. 6:20-cv-1657-CEM-RMN

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on Plaintiff Commodity Futures Trading Commission's Motion to Appoint a Limited Receiver, Dkt. 173, filed June 15, 2023. The Motion is unopposed by all Defendants who have appeared in the case. *See* Dkt. 173 at 7. Upon consideration, I respectfully recommend that the Motion be granted.

## I. BACKGROUND

On February 4, 2021, Plaintiff filed its Amended Complaint alleging that Defendants engaged in a fraudulent scheme to solicit and

misappropriate money invested with Defendants beginning in or around February 2013. Dkt. 98 at ¶ 1. According to the Amended Complaint, Defendants solicited at least $57.9 million from more than 1,700 investors and misappropriated the funds by depositing them into Defendants' personal bank and trade accounts. *Id.*

Plaintiff alleges that Defendant Avinash Singh ("Singh") and his company Defendant Highrise Advantage, LLC ("Highrise"), Defendant Randy Rosseau ("Rosseau") and his company Defendant Bull Run Advantage, LLC ("Bull Run"), Defendant Daniel Cologero ("Cologero") and his company Defendant Green Knight Investments, LLC ("Green Knight"), Defendant Hemraj Singh ("Raj") and his company Defendant King Royalty, LLC ("King Royalty"), and Defendant Surujpaul Sahdeo ("Sahdeo") and his company Defendant SR&B Investment Enterprises, Inc. ("SR&B"), (collectively, "Defendants"), have solicited and accepted at least $57 million from at least 1,300 participants ("pool participants"), in connection with pooled investments in retail foreign currency contracts ("forex"). *Id.* Plaintiff alleges that pool participants deposited funds directly into the Highrise master commodity pool ("Master Pool") or into one of four "feeder" pools (Bull Run, Green Knight, King Royalty, and SR&B) (collectively, "Feeder Pools") that funneled most of the deposits they received to the Master Pool. *Id.*

Further, Plaintiff claims that rather than use all of the pool participants' funds to trade forex in the Master Pool, Singh and Highrise traded only a small portion and instead misappropriated over $20 million of pool participants' funds to pay for personal expenses and to make Ponzi-type payments to other pool participants, in addition to payments to feeder fund entities. *Id.* at ¶ 2.

According to Plaintiff, because Highrise, Green Knight, SR&B, King Royalty, and Bull Run (collectively, the "Corporate Defendants") solicited funds for the purpose of trading forex in pooled accounts, each acted as a commodity pool operator ("CPO") while operating a commodity pool in its own name. *Id.* at ¶ 3. Plaintiff additionally alleges that at no time during the "Relevant Period" were any of the Corporate Defendants registered with the CFTC as CPOs. *Id.* Plaintiff claims that Defendants Singh, Cologero, Sahdeo, Raj, and Rosseau (collectively, the "Individual Defendants") acted as Associated Persons ("APs") of their respective CPOs by soliciting participation in their respective commodity pools. *Id.* And Plaintiff further claims that the Individual Defendants were likewise not registered as APs of their respective CPOs during the "Relevant Period." *Id.*

Moreover, Plaintiff alleges that, as part of the fraudulent scheme, Highrise issued monthly account statements to pool participants that directly participated with Highrise as well as to the pool participants who

ran the Feeder Pools, which misrepresented the profits and balances of the pool participants' respective interests in the Master Pool. *Id.* at ¶ 4. And, according to Plaintiff, Green Knight, Bull Run, King Royalty, and SR&B likewise each issued monthly account statements to their pool participants that misrepresented the profits and balances of the pool participants' respective interests in the Feeder Pools, as well as the Master Pool. *Id.*

Plaintiff claims that by engaging in this and related conduct, Defendants engaged, are engaging, or are about to engage in acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26, and accompanying CFTC regulations ("Regulations"), 17 C.F.R. pts. 1–190 (2022). *Id.* at ¶ 5. Further, Plaintiff claims that unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in the Amended Complaint and similar acts and practices. *Id.* at ¶ 6.

Plaintiff, pursuant to Sections 6c(a) and 2(c)(2)(C)(vii) of the Act, 7 U.S.C. §§ 13a-1, 2(c)(2)(C)(vii), sought to enjoin Defendants' unlawful acts and practices. *Id.* Each of the feeder funds (Green Knight, Bull Run, King Royalty, and SR&B, and their respective principals Daniel Cologero, Randy Rosseau, Hemraj Singh and Surujpaul) ("Settling Defendants") have entered into consent orders of permanent injunction, restitution and civil monetary penalties with Plaintiff. *See* Dkts. 178, 183. Plaintiff also filed a motion for

- 4 -

entry of default judgments against Defendants Highrise and A. Singh, which is still pending before this Court. *See* Dkt. 177.

Plaintiff now moves for the appointment of a receiver, arguing that it is necessary and appropriate (i) for the purposes of recovering funds that were fraudulently transferred or otherwise improperly transferred monies of investors by the Corporate Defendant Highrise to insiders, affiliates, and/or third parties who did not provide equivalent value and to investors who received net gains at the expense of other investors who suffered losses, and to otherwise pursue viable claims for recovery by the Receivership Estate,[1] and (ii) to preserve all recovered funds and other assets pending further court order directing the distribution thereof. *See* Dkt. 173.

## II.   ANALYSIS

The appointment of a receiver is a well-established equitable remedy available to the CFTC in civil enforcement proceedings for injunctive relief. *See, e.g.*, *CFTC v. Am. Commodity Grp. Corp.*, 753 F.2d 862, 866 n.6 (11th Cir. 1984) ("The case law indicates that the decision to appoint an equity receiver in enforcement actions under the Commodities [sic] Exchange Act is a matter within the sound discretion of the trial judge.").

---

[1] The "Receivership Estate" is defined here as the property, wherever held, as gathered by the Receiver on behalf of the Receivership Entity (defined below).

Here, Plaintiff contends that the appointment of a receiver in this case is necessary for the purpose of pursuing recovery claims and actions for fraudulent transfers or otherwise improperly transferred monies of investors; and, eventually, to distribute funds to harmed pool participants. Plaintiff argues that this is especially important in this case, as Defendants Highrise and A. Singh "have overpaid funds to certain investors as part of their fraudulent scheme" which funds could be "recovered by a Limited Receiver who would then make application to the Court for equitable distribution to investors who suffered losses." Dkt. 173 at 4–5.

Based on the foregoing, I find good cause to appoint Melanie E. Damian as receiver for the limited purposes described herein. As such, I recommend ordering as follows:

### A.      Limited Appointment of Receiver

Melanie E. Damian, whose business address is Damian Valori Culmo, 1000 Brickell Avenue, Suite 1020, Miami, Florida 33131, should be appointed as receiver with the limited powers set forth below for an equity receiver ("Receiver") for Defendant, Highrise Advantage, LLC (the "Receivership Entity"), any d/b/a, successor, affiliate, subsidiary, or other entity owned, controlled, managed, or held by, or on behalf of, or for the benefit of Defendant Highrise or A. Singh (collectively, "Receivership Defendants");

The Receiver shall be the sole agent of this Court in acting as Receiver under any Order.

### B.    Limited Duties and Powers of Receiver

The Receiver should be directed and granted complete authority to accomplish the following:

1.    Institute, commence, sue, prosecute, pursue, maintain, defend, intervene, become a party to, and otherwise participate in any action or legal proceeding by or on behalf of the Receivership Entity and/or the Receivership Estate, and/or represent in every way the Receivership Entity and/or the Receivership Estate in any action or legal proceeding, in any federal, state, or foreign jurisdiction, and/or for purposes of asserting or pursuing claims and making pre-suit demands, to recover fraudulent transfers or otherwise improperly transferred monies of investors by the Corporate Defendant Highrise (i) to insiders, affiliates, and/or third parties who did not provide equivalent value, and (ii) to investors who received net gains at the expense of other investors who suffered losses, and (iii) to otherwise pursue viable claims for recovery by the Receivership Estate as the Receiver, in her sole discretion, deems necessary and advisable to carry out her duties under this Order and in the best interest of the Estate (collectively, the "Recovery Claims"). However, Recovery Claims does not include any claims against Settling Defendants. Further, the Receiver may not, pursue any claims

against any of the Settling Defendants, whose liability will be established by the Consent Orders of Permanent Injunction now pending approval by the Commission and entry by the Court;

2.      Engage in settlement negotiations, settling, dismissing, and otherwise disposing of any and all Recovery Claims without obtaining prior approval from this Court, provided that both Plaintiff and the Receiver approve the settlement and agree that the settlement amount is reasonable and in the best interest of Receivership Estate. The Receiver is further granted authority to enter into and sign any and all settlement agreements and/or take all actions necessary to give effect to settlements of the Recovery Claims, on behalf of the Receivership Entities and/or the Receivership Estate, without further order from this Court. Based on the limited resources available to the Estate and the significant quantity of Recovery Claims that the Receiver is expected to pursue, the Court finds that it would be in the best interest of the Estate to grant such authority to the Receiver, provided the Plaintiff consents to such settlements. The Receiver is authorized to apply for Court approval of any settlement that would require a Court Order pursuant to its term;

3.      Issue subpoenas, schedule depositions, and otherwise take discovery in this enforcement action to obtain information and records pertaining to the Receivership Defendants;

4.      Apply to any court, tribunal, or regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Orde; and

5.      Apply to this Court as necessary for further directions in discharging her powers and duties under this Order.

## C.      Delivery of Asserts and Records to Receiver

Immediately upon service of an Order upon them, the Receivership Entity and any other person or entity served with a copy of the Order shall be directed to immediately or within such time as permitted by the Receiver in writing, deliver over to the Receiver:

1.      Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, of the Receivership Entity that has not already been turned over to Plaintiff;

2.      Possession and custody of records of the Receivership Entity, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

3.      Information and records identifying the accounts, employees, properties, or other assets of the Receivership Entity; and

4.      All keys, computer passwords, entry codes, PIN numbers, and combinations to locks necessary to gain or to secure access to any of the assets or documents of the Receivership Entity, including but not limited to, access to the Receivership Entity's accounts, computer systems, means of communications, and other digital devices.

With respect to the duties set forth in subsections III.A-D above, the Individual Defendant, A. Singh, shall retain his rights to assert any applicable privilege.

## D.      Cooperation with Receiver

The Receivership Defendants and all their agents, employees, independent contractors, attorneys, and all other persons or entities served with a copy of the Order shall be directed to cooperate fully with and assist the Receiver in the performance of her duties. This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files in any medium; and advising all persons who owe money to the Receivership Entity that all debts should be paid directly to the Receiver, unless already turned over to Plaintiff. The Settling Defendants are required to cooperate with the Receiver as set forth in their respective Consent Orders.

The requirement of cooperation, however, does not impinge on the Individual Defendant's, A. Singh's, rights to assert any applicable privilege. It also does not impinge on the right of any person or entity to access any court exercising jurisdiction over a territory in which any assets affected by this Order are situated for the purpose of raising with that court any questions regarding the recognition or enforcement of this Order in respect of such assets.

**E.    Stay**

Except by leave of the Court, during the pendency of the receivership ordered, the Receivership Entity and its agents, employees, independent contractors, and attorneys, and all other persons and entities should be stayed and prohibited from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, or in the name of the Receivership Entity, the Receiver, Receivership Estate, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

1.    Petitioning, or assisting in the filing of a petition, that would cause the Receivership Entity to be placed in bankruptcy;

2.    Commencing, prosecuting, litigating, or enforcing any suit or proceeding against the Receivership Entity, or any of its subsidiaries or

affiliates, except that actions may be filed to toll any applicable statute of limitations;

3.      Commencing, prosecuting, continuing, or entering any suit or proceeding in the name or on behalf of the Receivership Entity, or any of its subsidiaries or affiliates;

4.      Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Receivership Entity or any of its subsidiaries or affiliates, or any property claimed by it, or attempting to foreclose, forfeit, alter, or terminate any of the Receivership Entity's interests in property, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

5.      Using self-help or executing or issuing, or causing the execution of issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Entity, or any of its subsidiaries or affiliates, or the Receiver, or any agent of the Receiver; and

6.      Doing any act or thing to interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the

property and assets of the Receivership Entity and the Receivership Estate. Nothing in this section ==shall prohibit== any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Entity.

Nothing in this section ==shall prohibit== any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Entity.

### F.    Compensation of Receiver and Counsel

I recommend that the Receiver and all personnel hired by the Receiver, including Counsel to the Receiver, be compensated on a contingency fee basis for their time expended in connection with the Recovery Claims. The contingency percentages listed below would be the total fee to be paid as compensation for such time and efforts.

The Receiver and all counsel will be compensated for their services only when there is a recovery as a result of the efforts of the Receiver ==and/or== counsel, either through negotiations, settlement, judgment, or otherwise.

The duties to be performed by the Receiver and counsel that would be covered by the proposed contingency fee arrangement include: (A) investigation, demands pursuant to, negotiation, and prosecution of the Recovery Claims against insiders, affiliates, third parties, ==and/or== investors who received net gains or are otherwise liable to the Receivership Estate; and (B)

all fiduciary and legal services performed in connection with making demands, negotiating a resolution of, or filing and prosecuting the Recovery Claims, before or after any litigation, arbitration or other legal proceeding is commenced.

The Receiver's counsel shall be entitled to the following contingency fees:

a. Thirty percent (30%) of all gross recoveries received by the Receivership Estate at any time before the Commencement of Action[2];

b. Thirty-three percent (33%) of all gross recoveries received by the Receivership Estate after the Commencement of Action; or

c. Forty percent (40%) of all gross recoveries received by the Receivership Estate after any appeal is taken.

Other than the contingency fees set forth above, the Receiver is also entitled to reimbursement of actual expenses incurred in connection with the Recovery Claims (the "Expenses"), the Receiver's counsel will not be entitled to any additional fees from the Estate for services rendered in connection with the Recovery Claims. The reimbursement of Expenses is also entirely

---

[2] "Commencement of Action" shall mean the day the Receiver files a lawsuit, court action, arbitration, or other contested proceeding before a court, arbitrator(s), tribunal, or any other authority.

contingent upon there being available recovered funds in the Receivership Estate.

Before the Receiver and her counsel are paid the above-proposed contingency fee from any gross recovery resulting from the Recovery Claims, the Receiver shall file a motion with this Court seeking final allowance and payment of the contingency fee and any Expenses[3] incurred or advanced by the Receiver and/or her counsel in connection with the Recovery Claims.[4]

The Receiver and her counsel must keep accurate records of their time and work performed in connection with the Recovery Claims. Further, the Receiver and her counsel will maintain records of the Expenses they incur or advance in connection with the Recovery Claims. Such Expenses will be separately itemized on the Receiver's and counsels' monthly billing statements based on the particular service involved and out-of-pocket expense incurred or advanced, in addition to expenses incurred for general receivership,

---

[3] Expenses shall mean pre-suit expenses and post-suit expenses for, *inter alia*, expert witnesses, jury consultants, demonstrative evidence consultants, photocopying, scanning, digitizing and document imaging/coding, postage, facsimiles, long-distance telephone calls, travel, courier and other delivery services, computerized research, deposition and court reporting transcript and other fees, and videography fees and costs. No expenses will be charged to the Estate for word processing or secretarial overtime in connection with any Recovery Claims or other asset recovery efforts.

[4] The Receiver's counsel must request the Receiver's approval prior to incurring or advancing any Expenses in connection with those efforts.

administrative, and other matters.

The Receiver and her counsel shall not be obligated to pursue, file or prosecute any particular Recovery Claim or other asset recovery efforts, as doing so is entirely within the discretion of the Receiver.

### G.   Persons Bound by the Order

The District Judge's Order would be binding on any person who receives actual notice of the Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of the Defendants, or is in active concert or participation with the Defendants.

### H.   Bond

At this time, it is recommended that the Receiver be appointed without bond.

### I.   Service of Order

It is recommended that the District Judge's Order may be served by any means, including via electronic mail or facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any records or assets of the Receivership Defendants, or that may be subject to the provisions of the District Judge's Order.

### III.   CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that:

1.  Plaintiff's Unopposed Motion to Appoint Receiver (Dkt. 173) be **GRANTED**; and

2.  Melanie E. Damian be **APPOINTED** as Receiver with the powers and authority as set forth herein.

<u>**NOTICE TO PARTIES**</u>

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida, on July 19, 2023.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Hon. Carlos E. Mendoza

Counsel of Record